IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VANESSA L. CHAVIRA,

    Plaintiff,

v.                                                                           Civ. No. 20-563 GBW

KILOLO KIJAKAZI,[1]
*Acting Commissioner of the Social*
*Security Administration*,

    Defendant.

## ORDER GRANTING REMAND

This matter comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision to deny her Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI"). *Doc. 20*. For the reasons explained below, the Court GRANTS Plaintiff's Motion and REMANDS the case to the Commissioner for further proceedings consistent with this opinion.

### I.    PROCEDURAL HISTORY

Plaintiff filed initial applications for SSDI and SSI on August 11, 2017, and June 8, 2018, respectively, alleging disability beginning May 2, 2016. Administrative Record ("AR") at 20, 70. Plaintiff's application was denied on initial review on November 1,

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is automatically substituted for Andrew Saul as defendant in this matter.

2017, and again on reconsideration on January 31, 2018. AR at 100, 120. On January 11, 2019, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 33–68. The ALJ issued an unfavorable decision on April 3, 2019. AR at 27. Plaintiff sought review from the Appeals Council, which denied review on April 7, 2020, AR at 1, making the ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 416.1481, 422.210(a).

On June 9, 2020, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. *See doc. 1*. On February 9, 2021, Plaintiff filed her Motion to Reverse or Remand Administrative Agency Decision, *see doc. 20*, along with a memorandum in support, *see doc. 21*. The Commissioner responded on April 12, 2021. *See doc. 23*. Briefing on Plaintiff's Motion was complete on April 26, 2021, *see doc. 25*, with the filing of Plaintiff's reply, *see doc. 24*.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

### III.   ALJ EVALUATION

#### A.   Legal Standard

For purposes of both SSDI and SSI, an individual is disabled when he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the Social Security Administration ("SSA") has developed a five-step test. *See* 20 C.F.R. § 404.1520.[2] If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." *Id*. § 404.1520(a)(4)(i–iv) (citing *id*. § 404.1509); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical

---

[2] Plaintiff has applied for both SSDI and SSI. The five-step test for determining disability and other relevant regulations are the same for both benefits but are codified in two separate parts of the Code of Federal Regulations. *See* 20 C.F.R §§ 404.1520, 416.920. Part 404 of Title 20 of the Code of Federal Regulations governs SSDI, while Part 416 governs SSI. In the interests of efficiency and judicial economy, the Court only cites to applicable regulations in Part 404 of Title 20 of the Code of Federal Regulations in this order, but the analogous regulations in Part 416 also apply.

and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## B. The ALJ's Decision

On April 3, 2019, the ALJ issued a decision denying Plaintiff's application for SSDI and SSI. *See* AR at 27. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since May 2, 2016, the alleged onset date." AR at 22. At step two, he found that Plaintiff suffers from "the following severe impairments: cervical and lumbar degenerative disc disease and cervical radiculopathy." *Id.* He also noted

that Plaintiff has hypertension, left plantar fascial fibromatosis, and chronic headaches, but found these conditions non-severe. AR at 23. At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. *Id.*

At step four, the ALJ found that Plaintiff does did not have the RFC to return to her past employment as a delicatessen but does have the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to several limitations. AR at 23, 25. The ALJ found that Plaintiff can only occasionally be exposed to extreme cold and vibration and perform the following physical activities: stoop, kneel, crouch, crawl, climb ramps and stairs, and push and pull with her right upper extremity. AR at 23. The ALJ also found that Plaintiff can never climb ladders, ropes, or scaffolds. *Id.* He concluded that Plaintiff's cervical and lumbar degenerative disc disease, cervical and lumbar scoliosis, and cervical radiculopathy could reasonably be expected to cause her alleged pain and other symptoms. AR at 24. He held, though, that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. *Id.* In doing so, he found persuasive the medical opinions of agency physicians Dr. Mark A. Werner and Dr. Michael Slager and rejected the opinion of Plaintiff's physician, Dr. Adolfo V. Sanchez, as unpersuasive. AR at 24-25.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that she can perform jobs that exist in significant numbers in the national economy. AR at 26. Specifically, the ALJ found that that Plaintiff can perform the requirements of three representative sedentary occupations: (1) document preparer (Dictionary of Occupational Tables ("DOT") 249.587-018, 150,512 jobs nationally); (2) information clerk (DOT 237.367-046, 89,850 jobs nationality); and (3) assembler (DOT 734.687-018, 251,670 jobs nationally). *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled (as the Social Security Act defines the term) from May 2, 2016, through the date of his decision. *Id.*

## IV.  PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred at step four in five ways: by (1) failing to build a "logical bridge" between his evaluation of the medical evidence and his RFC determination, *see doc. 21* at 12-14 (citing *Correa v. Berryhill*, No. 1:16-cv-01314-LF, 2018 WL 1472480, at *8 (D.N.M. Mar. 26, 2018)); (2) not complying with the explanatory requirements of 20 C.F.R. § 404.1520(b) when rejecting Dr. Sanchez's medical opinion, *see id.* at 14-17; (3) not adequately explaining his rejection of Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms caused by her impairments, *see id.* at 17-20; (4) not assessing the effect of Plaintiff's headaches on her

functioning, *see id.* at 19; and (5) not including a reaching limitation in Plaintiff's RFC, *see id.* at 20-22. Defendant disputes each of these arguments. *See generally doc. 23*.

## V. ANALYSIS

The Court agrees with Plaintiff's third and fourth arguments and so does not reach her first, second, or fifth ones. The ALJ erred at step four by not complying with the requisite legal standards when rejecting Plaintiff's testimony about the intensity, persistence, and limiting effects of her neck pain, back pain, and other symptoms. He also erred at step four by not considering the effect that Plaintiff's headaches may have on her RFC despite identifying them as one of her impairments at step two.

### A. The ALJ's Inadequate Explanation for Rejecting Plaintiff's Testimony

The ALJ did not comply with the requisite legal standards when rejecting Plaintiff's testimony about the intensity, persistence, and limiting effects of her neck pain, back pain, and other conditions. The ALJ had to evaluate Plaintiff's testimony "using the three-step analysis set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)," since Plaintiff alleges a disability arising from back and neck pain. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). At step one, the ALJ had to determine "whether the claimant established a pain-producing impairment by objective medical evidence." *Id.* At step two, the ALJ had to "take[] the [claimant's] subjective allegations of pain as true," *Luna*, 834 F.2d at 163, and assess "whether there is a 'loose nexus'

8

between the proven impairment and the [c]laimant's subjective allegations of pain," *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (quoting *Luna*, 834 F.2d at 164); *accord Keyes-Zachary*, 695 F.3d at 1166-67.  Finally, at step three, the ALJ had to assess "whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling."  *Keyes-Zachary*, 695 F.3d at 1167; *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (requiring the ALJ to consider a claimant's assertions of pain at *Luna* step three and "decide whether he believed them" (quoting *Luna*, 834 F.2d at 163)).

This *Luna* framework is equivalent to the two-step process prescribed by the SSA for evaluating a claimant's statements about her pain and other symptoms.  Step one of the agency process combines steps one and two of the *Luna* analysis to ask "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the] individual's symptoms, such as pain."  *See* SSR 16-3P, 2016 WL 1119029, at *2 (Mar. 16, 2016); 20 C.F.R. § 404.1529(b).  Step two directs the ALJ to "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities."  *See* SSR 16-3P, 2016 WL 1119029, at *2; 20 C.F.R. § 404.1529(c).

At *Luna* step three (agency step two), Tenth Circuit precedent and SSA rulings and regulations direct the ALJ to consider the following non-exhaustive list of factors to

assess a claimant's statements about the disabling effect of pain and other symptoms: (i) the claimant's activities of daily living ("ADLs"); (ii) the location, duration, frequency, and intensity of the claimant's pain and other symptoms; (iii) precipitating and aggravating factors, including psychological disorders; (iv) the persistency of the claimant's attempts to find relief for these symptoms; (v) the regularity of the claimant's contact with medical professionals; (vi) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate her symptoms; (vii) treatment, other than medication, that the claimant receives or has received for her symptoms; (viii) the claimant's willingness to try prescribed treatment; and (ix) any measures that the claimant uses or has used to relieve her pain or other symptoms (e.g., use of crutches or cane, lying flat on her back, sleeping on a board, etc.). *See Keyes-Zachary*, 695 F.3d at 1167 (quoting *Luna*, 834 F.2d at 165-66); 20 C.F.R. § 404.1529(c)(3); SSR 16-3P, 2016 WL 1119029, at *7.

In his evaluation, the ALJ need not provide "a formalistic factor-by-factor recitation of the evidence," *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), or discuss factors for which "there is no information in the evidence of record," SSR 16-3P, 2016 WL 1119029, at *7. But the ALJ must do more than "simply 'recite the factors that are described in the regulations,'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004)

(quoting SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996)),³ or provide "a conclusion in the guise of findings," *id.* at 679 (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ must expressly consider all factors for which there is evidence in the record, *id.* at 680 (citing *Winfrey*, 92 F.3d at 1021), "link or connect … the factors he recite[s] to … evidence in the record," and "explain why the specific evidence relevant to each factor led him to conclude [the] claimant's subjective complaints were not credible," *id.* at 679. His analysis must "be clearly articulated so the [claimant] and any subsequent reviewer can assess how [he] evaluated the [claimant's] symptoms." SSR 16-3P, 2016 WL 1119029, at *9.

The ALJ's evaluation of Plaintiff's pain and other symptoms at *Luna* step three (agency step two) does not comply with the above explanatory requirements. At this step, the ALJ rejected Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." AR at 24; *see also* AR at 24 (finding Plaintiff's statements "inconsistent because the evidence does not support them"). To support his conclusion, the ALJ explained:

> The claimant has cervical and lumbar degenerative disc disease [AR at 277, 413]. She has stated that her cervical and lumbar pain started when she was working at a delicatessen in 2014. She said that she received injections in the neck with no relief [AR at 279, 309, 317, 320]. An MRI from 2014, as well as x-rays from September 2017[,] confirmed her report [AR at 323-25].

---

³ SSR 16-3P, which supersedes SSR 96-7p, contains the same language. *See* 2016 WL 1119029, at *9.

> Another set of x-rays from October 2017 confirmed these findings [AR at 359, 361-69]. Her spine has been tender to palpation, and she has presented decreased bilateral shoulder and elbow range of motion [AR at 280-82, 294, 343, 439, 443]. She has been to physical therapy several times [AR at 273-313]. She said that physical therapy did not help with her neck [AR at 383]. She has said that she tried muscle relaxants with mild relief [AR at 316].
>
> The claimant also has mild cervical and lumbar scoliosis [AR at 378, 387]. She had medial branch block injections at L4, L5, S1, S2, and S3, with very mild relief [AR at 431]. The claimant has cervical radiculopathy [AR at 277, 315, 318, 322, 339-40, 371, 376, 378, 381, 384, 414].

AR at 24.

Then, the ALJ proceeded to assess the persuasiveness of the three medical opinions in the record. *See* AR at 24-25. In one of these assessments, the ALJ recounted Plaintiff's self-evaluation of her ADLs—particularly her meal preparation, cleaning, laundry, driving, shopping in stores, taking her children to the bus stop and picking them up from school, and her denial of personal care problems. *See* AR at 24-25 citing (AR at 218-226).

The above explanation is inadequate in two respects. First, the explanation does not conduct any express analysis of applicable factors at *Luna* step three (agency step two). The first two paragraphs identify Plaintiff's pain-producing impairments and list the objective medical evidence for them—tasks that fall within *Luna* step one. The rest of the explanation addresses the persuasiveness of medical opinions—tasks that are required by 20 C.F.R. §

404.1520c.  None of these paragraphs conduct the multifactor analysis required by *Luna*, its progeny, or agency rulings and regulations.  Omitting this analysis is a reversable error.  *See, e.g.*, *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017).  It precludes the Court, as a subsequent reviewer, from being able to "assess how the adjudicator evaluated [Plaintiff's] symptoms," as SSR 16-3P requires.  *See* 2016 WL 1119029, at *9.

Second, the ALJ's explanation fails to assess several factors for which there is evidence in the record.  The record shows that Plaintiff attended roughly two dozen medical and physical therapy appointments for her back and neck pain between July 2016 and October 2018.  *See generally* AR at 275-452.  It also demonstrates that, during this time, medical professionals prescribed, and Plaintiff took, a variety of painkillers.  *See, e.g.*, AR at 414 (Tramadol); AR at 436 (Norco); AR at 443 (Gabapentin).  Despite this evidence, the ALJ does not mention the persistency of Plaintiff's attempts to find relief for her pain, the regularity of her contact with medical professionals, or the medication that she has taken for her pain.  *See* AR at 23-25.  "[F]ail[ing] to expressly consider [a] claimant's persistent attempts to find relief from h[er] pain, h[er] willingness to try various treatments for h[er] pain, and h[er] frequent contact with physicians concerning h[er] pain-related complaints" is a reversable error.  *Hardman*, 362 F.

3d at 680.

Defendant's sole argument for the adequacy of the ALJ's consideration of Plaintiff's statements under the *Luna* framework is unconvincing.[4] Defendant contends that the ALJ's explanation is sufficient because it "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *See doc.* 23 at 12 (quoting *Qualls*, 206 F.3d at 1372). This contention fails to read the quoted language from *Qualls* in its context. In *Qualls*, the Tenth Circuit rejected a claimant's argument that the ALJ "failed to link his credibility findings to the evidence, as required by *Kepler v. Chater*, [68 F.3d at 391]." *See* 206 F.3d at 1372. Distinguishing *Kepler* (which reversed an ALJ's decision at *Luna* step three for reciting the general factors considered at this step without tying them to any specific evidence, *see Kepler*, 68 F.3d at 391), the Tenth Circuit found the ALJ's analysis at step three sufficient since the ALJ recited both the "factors he

---

[4] Defendant's other arguments about the adequacy of the ALJ's evaluation of Plaintiff's statements about her symptoms ignore the *Luna* framework. *See doc.* 23 at 11-12 (citing *Hendron v. Colvin*, 767 F.3d 951, 954-56 (10th Cir. 2014), for the proposition that the ALJ's evaluation was adequate because it "sufficiently described Plaintiff's own reports about her abilities and then discussed the relevant medical evidence"); *doc.* 23 at 13 (citing *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986), for the proposition that the evidence in the record does not require a finding of disability based on Plaintiff's pain). *Hendron* assessed whether the ALJ "support[ed] [his] RFC determination with a narrative statement explaining how the medical and non-medical evidence sustained a conclusion that [the claimant] could perform a full range of sedentary work." *See* 767 F.3d at 954-56. *Brown* assessed whether substantial evidence existed for an ALJ's decision despite him posing hypothetical questions to a vocational expert about the claimant's physical and mental condition that did not account for the claimant's claims of pain. *See* 801 F.2d at 361. Neither case is relevant to whether the ALJ's explanation for rejecting Plaintiff's statements about her pain and other symptoms complied with the *Luna* and SSR 16-3P frameworks.

considered" and "the specific evidence he relied on in determining that the plaintiff's allegations of disabling pain were not credible." *Qualls*, 206 F.3d at 1372. *Qualls* is distinguishable because, here, the ALJ did not mention the factors that he considered at *Luna* step three,[5] leaving the Court to guess as to whether he considered all the factors for which there is evidence in the record and the weights that he assigned to them.

### B. The ALJ's Failure to Consider Plaintiff's Headaches

The ALJ also failed to consider all of Plaintiff's medically determinable impairments when determining her RFC at step four. At step two, the ALJ found that Plaintiff has "non-severe chronic headaches" AR at 23 (citing AR at 94, 451), thereby requiring him to consider the limiting effects of these headaches when deciding Plaintiff's RFC, *see Wilson v. Astrue*, 602 F.3d 1136, 1141 (10th Cir. 2010); 20 C.F.R. § 404.1545(e). He did not do so. *See* AR 23-25 (omitting discussion of Plaintiff's headaches at step four). His failure prejudiced Plaintiff as there is evidence in the record that Plaintiff's headaches affect her RFC. *See* AR at 60-61 (asserting that

---

[5] The ALJ analysis of objective medical evidence at *Luna* step one lists evidence relevant to several *Luna* factors such as non-medical treatment, Plaintiff's willingness to try prescribed treatment, and the effectiveness of that treatment. Implicit consideration of evidence for some factors at step one is insufficient to discharge an ALJ's obligations under the *Luna* framework, especially where the step one analysis does not evaluate factors for which there is evidence in the record. *See Brownrigg*, 688 F. App'x at 546.

Plaintiff's headaches sometimes prevent her from doing chores like washing dishes).

Defendant's two arguments to the contrary are impermissible *post hoc* rationalizations. First, Defendant contends that the ALJ considered Plaintiff's headaches at step four as a symptom arising from her other medically determinable impairments. *See doc. 23* at 12. Implicit in this argument is a finding that Plaintiff's headaches are a symptom arising from her other impairments. The ALJ, though, made no such finding in his decision. *See* AR 23-25 (treating Plaintiff's headaches as a separate impairment at step two and omitting them from the analysis at step four). The absence of this finding makes Defendant's argument a "post hoc rationale for the ALJ's failure to discuss the headaches and any limitations they caused [which] is not a basis on which the ALJ's decision can be affirmed." *See Deardorff v. Comm'r, SSA*, 762 F. App'x 484, 489 (10th Cir. 2019) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008)).

Second, Defendant argues that the ALJ's RFC has substantial evidentiary support despite the ALJ not referencing Plaintiff's headaches in the analysis underlying it. *See doc. 23* at 8, 14-16. She notes that Plaintiff "often denied headaches, never displayed acute headache symptoms at office visits, and testified that her headaches did not prevent all activity and occurred only three to six days per week." *Id.* at 8 (citing AR at 60-62, 342-43, 394-96, 435-36, 438-39, 441-43). She also emphasizes that "no medical

16

professional recommended a headache treatment regimen or found that [Plaintiff] had any headache-related limitations." *Id.* at 8-9 (citing AR at 76-77, 90-94, 346-48). The issue, though, is not whether the ALJ's RFC has substantial evidentiary support but rather whether the ALJ considered Plaintiff's headaches when formulating her RFC as required by SSA regulations. Defendant's argument that the ALJ could have reached the same conclusion about Plaintiff's RFC had he considered her headaches cannot be used to rehabilitate his failure to do so. *See Carpenter*, 537 F.3d at 1267.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ committed at least two reversable errors at step four of his analysis. Therefore, the Court GRANTS Plaintiff's Motion to Reverse and Remand (*doc. 20*) and REMANDS to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**